UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

      - v. -               :     **SEALED**
                                      **INDICTMENT**

SIMON GOLDBRENER,
      a/k/a "Simon Goldbrenner,"      18 Cr. 614 (   )
      a/k/a "Shimon Goldbrenner,"    :
PERETZ KLEIN,
SUSAN KLEIN,
      a/k/a "Suri Klein,"
BEN KLEIN,
      a/k/a "Benzion Klein,"
      a/k/a "Benzi Klein,"
MOSHE SCHWARTZ,
SHOLEM STEINBERG, and
ARON MELBER,
      a/k/a "Aharon Melber,"

                     Defendants.

- - - - - - - - - - - - - - - - - x

## OVERVIEW

1.    The charges in this Indictment result from a scheme to defraud a federal program known as "E-rate," by billing that program for equipment and services that were not actually provided to certain private religious schools in Rockland County, New York, and elsewhere.  The E-rate program helps schools serving underprivileged students obtain internet access and other forms of communications technology by substantially reimbursing those schools for purchasing the necessary equipment and services from private vendors.  By billing the E-rate program for equipment and services which were not in fact

provided, SIMON GOLDBRENER, a/k/a "Simon Goldbrenner," a/k/a "Shimon Goldbrenner," PERETZ KLEIN, SUSAN KLEIN, a/k/a "Suri Klein," BEN KLEIN, a/k/a "Benzion Klein," a/k/a "Benzi Klein," MOSHE SCHWARTZ, SHOLEM STEINBERG, and ARON MELBER, a/k/a "Aharon Melber," the defendants, fraudulently obtained millions of dollars in E-rate funds to which they were not entitled, and which should lawfully have been spent to help educate underprivileged children.

## The E-rate Program

2.    The Telecommunications Act of 1996 (47 U.S.C. § 251, *et seq.*) directed the Federal Communications Commission ("FCC") to establish the E-rate program to distribute funds to schools and libraries serving economically disadvantaged children, so that those institutions could afford needed telecommunication services, internet access, and related equipment (such as wiring and servers). The program began distributing funds in 1998. Over 30,000 applications from schools and libraries seeking funds to serve economically disadvantaged children are received each year. Requests for E-rate funds have exceeded the amount of funds available every year.

3.    The E-rate program is administered by the Universal Service Administrative Company ("USAC"), a non-profit corporation which is in turn regulated and funded by the FCC.

The FCC has issued specific rules and regulations that govern participation in the E-rate program. Among other things:

a. To obtain E-rate funds, educational institutions certify to USAC that they are purchasing equipment and services, such as computer server and maintenance for that server, from a private vendor. If USAC approves some or all of the funding requested, USAC provides funds to defray the cost of the equipment or services by up to 90% of their cost.

b. To apply for E-rate funds, a school first submits an FCC Form 470, describing the services and equipment for which the applicant is seeking E-rate funds. The completed form is posted to USAC's website for potential vendors to review. Posting the Form 470 opens a competitive process, in which private vendors bid to provide the services and equipment sought by the school. The school is responsible for administering a fair and open bidding process that selects the most cost-effective vendor.

c. Once a school selects a bidder, the school contracts with that vendor to purchase the required services and equipment. The school then submits an FCC Form 471, the "Services Ordered and Certification Form." Form 471 describes the equipment or services ordered, the E-rate funds requested, and the vendor that will provide the equipment or services. On the Form 471 the school also certifies, among other things, that

the vendor was selected as the result of an open bidding process designed to select the most cost-effective means of meeting the school's educational and technological goals, and that the school did not receive anything of value, to include kickbacks, in connection with requesting the vendor's services. Similarly, vendors must file an FCC Form 473, which certifies, among other things, that the vendor will only submit invoices for equipment and services eligible for reimbursement under the E-rate program, and that the vendor has not paid kickbacks or offered other inducements to the schools in connection with the E-rate program.

      d.    Before E-rate funds are disbursed, the vendor must file an FCC Form 474, "Service Provider Invoice Form," billing the school for services or equipment that the vendor has provided. The school must also file an FCC Form 486, the "Receipt of Service Confirmation" form, certifying that the vendor has begun providing the requested equipment and services.

      e.    A school applying for E-rate funds may employ a consultant to help determine the equipment and services that the school needs, to manage the competitive bidding process, and to help complete the necessary forms. Consultants working on the schools' behalf must be independent of the vendors competing to sell E-rate funded equipment and services to the School. The regulations and rules governing the E-rate program forbid anyone

who is associated with a vendor from taking part in the competitive bidding process.

## The Defendants

4.  From at least in or about 2010 up to and including 2016, PERETZ KLEIN, SUSAN KLEIN, a/k/a "Suri Klein," BEN KLEIN, a/k/a "Benzion Klein," a/k/a "Benzi Klein," and SHOLEM STEINBERG, the defendants, held themselves out as vendors to schools participating in the E-rate program. In total, corporations controlled by PERETZ KLEIN, SUSAN KLEIN, BEN KLEIN, and STEINBERG (collectively, the "Vendor Defendants"), requested over $35 million in E-rate funds and received over $14 million in E-rate funds from in or about 2010 to in or about 2016.

5.  From at least in or about 2010 up to and including in or about 2016, SIMON GOLDBRENER, a/k/a "Simon Goldbrenner," a/k/a "Shimon Goldbrenner," and MOSHE SCHWARTZ, the defendants, held themselves out as consultants who assisted educational institutions that desired to participate in the E-rate program. GOLDBRENER and SCHWARTZ (collectively, the "Consultant Defendants"), and individuals acting at the direction of GOLDBRENER and SCHWARTZ, completed and filed E-rate documents, including the FCC forms described above, that resulted in the payment of millions of dollars in E-rate funds to the Vendor Defendants.

6.   ARON MELBER, a/k/a "Aharon Melber," the defendant, is an official at a private religious school ("School-1") in Rockland County, New York.  MELBER and School-1 have participated in the E-rate program with certain of the Vendor Defendants and Consultant Defendants.  As part of this process, MELBER filed certifications with USAC purporting to have obtained authorized E-rate funded equipment and services from Vendor Defendants selected through a fair and open bidding process.  From in or about 2009 through in or about 2015, School-1 received over one million dollars in E-rate funds.

## The Scheme to Defraud the E-rate Program

7.   From at least 2009 up to and including 2016, certain private religious schools located in Rockland County, New York (the "Schools"), including School-1, requested and received E-rate funds for the purpose of paying the Vendor Defendants for equipment and services that the Schools, Vendor Defendants, and Consultant Defendants falsely claimed had been provided to the Schools by the Vendor Defendants.

8.   In fact, however, the Schools never received millions of dollars' worth of items and services for which the Schools, the Vendor Defendants, and the Consultant Defendants billed USAC.  For example, ARON MELBER, the defendant, participated in billing USAC approximately $97,000 for distance learning equipment purportedly obtained from a company operated by SHOLEM

STEINBERG, the defendant, but such equipment was not in fact obtained. Some Schools did not even desire the requested services and equipment, because for religious or pedagogical reasons the Schools did not allow their students to use the internet or computers. In other cases, the Schools, Vendor Defendants, and Consultant Defendants requested hundreds of thousands of dollars of sophisticated technology that served no real purpose for the student population. For example, from 2009 through 2015, one day care center that served toddlers from the ages of 2 through 4 requested over $700,000—nearly $500,000 of which was ultimately funded—for equipment and services—including video conferencing and distance learning, a "media master system," sophisticated telecommunications systems supporting at least 23 lines, and high-speed internet—from companies controlled by PERETZ KLEIN and SUSAN KLEIN, a/k/a "Suri Klein," the defendants, using SIMON GOLDBRENER, a/k/a "Simon Goldbrenner," a/k/a "Shimon Goldbrenner," and MOSHE SCHWARTZ, the defendants, as consultants. In still other instances the Schools received equipment and services that fulfilled the functions for which the Schools had requested E-rate funds (such as providing the School with internet access), but the Schools, Vendor Defendants, and Consultant Defendants materially overbilled USAC for the items provided, in order to enrich

themselves at the expense of the underprivileged children the program was designed to serve.

9. As described above, to request E-rate funds, an educational institution files an FCC Form 470 and begins a fair and open bidding process to select the most cost-effective provider for the desired equipment and services. The Schools, however, did not hold fair and open bidding processes to select the Vendor Defendants. Instead, the Schools repeatedly entered E-rate contracts with the Vendor Defendants despite the existence of more cost-effective service providers than the Vendor Defendants. Typically the Schools did not conduct any bidding process at all. Rather, the Consultant Defendants and the Vendor Defendants presented the Schools with forms to sign or certify, awarding E-rate funded contracts to the Vendor Defendants. The Schools then certified and filed these forms, or allowed the Consultant Defendants to file these forms and make these certifications on the Schools' behalf, resulting in the fraudulent award of millions of dollars of E-rate funds to the Vendor Defendants.

10. As discussed above, consultants who represent educational facilities seeking E-rate funds must be independent of the vendors bidding to obtain E-rate funded contracts with those educational facilities. In filings with USAC, the Consultant Defendants held themselves out as such independent

consultants working for the Schools. In truth, however, the Consultant Defendants worked with and for the Vendor Defendants to fraudulently obtain E-rate funds for the Vendor Defendants. In coordination with, or at the direction of, the Vendor Defendants, the Consultant Defendants prepared E-rate requests filed under the Schools' names. As a result of those false and misleading E-rate filings, the Vendor Defendants received millions of dollars in E-rate funds for equipment and services that the Vendor Defendants did not in fact provide and which the Schools did not use. In return, the Consultant Defendants accepted payments totaling hundreds of thousands of dollars from the Vendor Defendants, despite falsely presenting themselves as independent of the Vendor Defendants.

11. In return for their participation in the scheme to defraud the E-rate program, the Schools and School officials, including School-1 and ARON MELBER, a/k/a "Aharon Melber," the defendant, received a variety of improper benefits from the Vendor Defendants, including: A percentage of the funds fraudulently obtained from E-rate for equipment and services that were not in fact provided to the School; free items paid for with E-rate funds but not authorized by the program, such as cellphones for School employees' personal use and alarm systems and security equipment (which the E-rate program does not authorize) installed at the Schools; and free services for which

the E-rate program authorizes partial reimbursement (such as internet access) but for which the Schools did not-contrary to their statements to USAC-make any payment at all.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

12.  The allegations contained in paragraphs 1 through 11 above are hereby repeated, realleged, and incorporated by reference herein as though fully set forth herein.

13.  From at least in or about 2010 up to and including in or about March 2016, in the Southern District of New York and elsewhere, SIMON GOLDBRENER, a/k/a "Simon Goldbrenner," a/k/a "Shimon Goldbrenner," PERETZ KLEIN, SUSAN KLEIN, a/k/a "Suri Klein," BEN KLEIN, a/k/a "Benzion Klein," a/k/a "Benzi Klein," MOSHE SCHWARTZ, SHOLEM STEINBERG, and ARON MELBER, a/k/a "Aharon Melber," the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, to wit, GOLDBRENER, PERETZ KLEIN, SUSAN KLEIN, BEN KLEIN, SCHWARTZ, STEINBERG, and MELBER conspired to file false and misleading documents with the E-rate program in order to obtain funds from the E-rate program for equipment and services that were supposedly provided to private religious schools located in

Rockland County, New York, and elsewhere, but which were not in fact provided, were provided only in part, and for which the E-rate program was grossly over-billed.

14. It was a part and object of the conspiracy that SIMON GOLDBRENER, a/k/a "Simon Goldbrenner," a/k/a "Shimon Goldbrenner," PERETZ KLEIN, SUSAN KLEIN, a/k/a "Suri Klein," BEN KLEIN, a/k/a "Benzion Klein," a/k/a "Benzi Klein," MOSHE SCHWARTZ, SHOLEM STEINBERG, and ARON MELBER, a/k/a "Aharon Melber," the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud - Peretz Klein Companies)

The Grand Jury further charges:

15. The allegations contained in paragraphs 1 through 11 above are hereby repeated, realleged, and incorporated by reference herein as though fully set forth herein.

16.  From at least in or about 2010 up to and including in or about March 2016, in the Southern District of New York and elsewhere, SIMON GOLDBRENER, a/k/a "Simon Goldbrenner," a/k/a "Shimon Goldbrenner," PERETZ KLEIN, SUSAN KLEIN, a/k/a "Suri Klein," MOSHE SCHWARTZ, and SHOLEM STEINBERG, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, and by such conduct, did affect a financial institution, and did aid and abet the same, to wit, GOLDBRENER, PERETZ KLEIN, SUSAN KLEIN, SCHWARTZ, and STEINBERG transmitted false documents and certifications across state lines via the Internet in order to obtain payment for equipment and services that were purportedly provided by companies owned and/or controlled by PERETZ KLEIN and SUSAN KLEIN, but had not in fact been provided.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Wire Fraud - Ben Klein Companies)

The Grand Jury further charges:

17.    The allegations contained in paragraphs 1 through 11 above are hereby repeated, realleged, and incorporated by reference herein as though fully set forth herein.

18.    From at least in or about 2010 up to and including in or about 2016, in the Southern District of New York and elsewhere, SIMON GOLDBRENER, a/k/a "Simon Goldbrenner," a/k/a "Shimon Goldbrenner," and BEN KLEIN, a/k/a "Benzion Klein," a/k/a "Benzi Klein," the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, and by such conduct, did affect a financial institution, and did aid and abet the same, to wit, GOLDBRENER and BEN KLEIN transmitted false documents and certifications across state lines via the Internet in order to obtain payment for equipment and services that were purportedly provided by companies owned and/or controlled by BEN KLEIN, but had not in fact been provided.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
### (Wire Fraud - Steinberg Companies)

The Grand Jury further charges:

19. The allegations contained in paragraphs 1 through 11 above are hereby repeated, realleged, and incorporated by reference herein as though fully set forth herein.

20. From at least in or about 2013 up to and including in or about 2016, in the Southern District of New York and elsewhere, SIMON GOLDBRENER, a/k/a "Simon Goldbrenner," a/k/a "Shimon Goldbrenner," SHOLEM STEINBERG, and ARON MELBER, a/k/a "Aharon Melber," the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, and by such conduct, did affect a financial institution, and did aid and abet the same, to wit, GOLDBRENER, MELBER, and STEINBERG transmitted false documents and certifications across state lines via the Internet in order to obtain payment for equipment and services that were

purportedly provided by companies owned and/or controlled by STEINBERG, but had not in fact been provided.

(Title 18, United States Code, Sections 1343 and 2.)

### FORFEITURE ALLEGATIONS

21. As a result of committing the offenses charged in this Indictment, SIMON GOLDBRENER, a/k/a "Simon Goldbrenner," a/k/a "Shimon Goldbrenner," PERETZ KLEIN, SUSAN KLEIN, a/k/a "Suri Klein," BEN KLEIN, a/k/a "Benzion Klein," a/k/a "Benzi Klein," MOSHE SCHWARTZ, SHOLEM STEINBERG, and ARON MELBER, a/k/a "Aharon Melber," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Asset Provision

22. If any of the above described forfeitable property, as a result of any act or omission of the defendant:

    (i)   cannot be located upon the exercise of due diligence;

    (ii)  has been transferred or sold to, or deposited with, a third person;

    (iii) has been placed beyond the jurisdiction of the Court;

    (iv)  has been substantially diminished in value; or

    (v)   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Sections 981, 982 and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

      (Title 18, United States Code, Sections 981 and 982; and
         Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
GEOFFREY S. BERMAN
United States Attorney

16