# NechelesLaw, LLP

1120 Avenue of the Americas
New York, NY 10036

June 2, 2022

<u>Via ECF</u>
Hon. Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

  Re: *United States v. Peretz Klein*, 18-cr-614

Dear Judge Karas:

  We respectfully submit this supplemental sentencing submission on behalf of Peretz Klein. In it, we (I) briefly reply to the government's submission, dated Dec. 8, 2020; (II) update the Court about what Mr. Klein had been doing since we submitted his original sentencing submission in the fall of 2020; and (III) discuss how the delay in his sentencing counsels in favor of a non-incarceratory sentence.

## I. Reply

In this section, we briefly reply to two points from the government's sentencing submission.

### A. <u>Mr. Klein Provided Either the Equipment E-Rate Funded Or Analogous, If Somewhat Cheaper, Equipment</u>

  In our sentencing submission, at 7–9, Mr. Klein acknowledged that he did fraudulent acts while providing the e-rate services to the schools in ways that violated e-rate regulations and consequently led to inflated costs, more items being ordered than were truly needed, and significant financial losses to the e-rate program.

  In its submission, the government alleges that Mr. Klein often billed USAC for services he did not provide at all. *See* Gov't Submission at 37. This assertion is incorrect.

  We explain the facts underlying this disagreement below, but we note first that we do not believe that this disagreement is material. Mr. Klein has admitted that he defrauded the e-rate program by, among other things, causing the schools to order equipment at inflated prices and to order items that they did not truly need or plan to use. Given that the parties agree on the loss amounts and guidelines calculations, we do not believe that the Court needs to resolve this disagreement to sentence Mr. Klein.

  The facts underlying this disagreement are as follows. As stated in our prior submission, Mr. Klein did not always provide the exact type of equipment to the schools that he certified he

NechelesLaw, LLP

would. Instead, he often provided cheaper, analogous models. *See* PSR ¶ 29 n.5; Defense Submission at 8.

The government claim that, at times, Mr. Klein did not provide the equipment at all appears to rely, largely, on reports complied by the FCC ("USAC Reports") after the execution of search warrants at 10 schools. *See* Defense Submission at 9–17. But those USAC Reports do not support the government's argument. The USAC Reports attempted to quantify what percentage of funded e-rate equipment was at the schools when searched. Crucially, however, USAC calculated this by dollar value, not number of items. In other words, if Mr. Klein had certified that he would provide a $50,000 phone system and instead provided one worth $30,000, USAC would report that they had been unable to locate 40% of the e-rate equipment. This explains much of the missing value in those USAC Reports.

In addition, many of the schools were not searched until years after the equipment had been provided. At least in some cases, the schools had moved in the meantime and some of the equipment was either not transferable, got lost in the move, or was sold. Therefore, some of the (smaller) equipment was not at the school when they were searched.

Indeed, we note that as part of defense counsel's factual investigation of this case, we visited two schools to which Mr. Klein provided e-rate services and found either the certified equipment, or similar or analogous items, in the schools.

There is, moreover, evidence cited in the government's own submission which proves that Mr. Klein did in fact provide the services for which he billed e-rate. At page 25 of its submission, the government cites a "kickback" contract a different defendant in this case, Aron Melber, signed with a school administrator. *See* Defense Submission at 25. Notably, that contract contains a clause which states: "Even before we get approved by the government, Party 2 will provide the service in a normal manner (like we were receiving it from Mr. Peretz Klein)." (parenthetical in the original; emphasis added). In other words, the contract required the new service provider to promise to provide, as Peretz Klein previously did, the schools the e-rate services they were requesting.[1]

B. <u>Mr. Klein has Fully Accepted Responsibility for His Crime</u>

The government also claims that Mr. Klein tries to "minimize[e] his conduct" by explaining the background to his crime. Government Submission at 36. This too is not true. Mr. Klein has fully accepted responsibility for his crime and understands that there is no excuse for his conduct. *Contra* the government, his explanation for how he ended up committing the fraud to which he had admitted, "does not indicate a lack of remorse, but [a]re merely an effort by [Mr.

---

[1] As discussed in our submission, at 22, between 2014–2016, while the FCC was investigating Hashomer and Mr. Klein, it gradually stopped paying his companies for e-rate services and equipment approved by USAC. As Mr. Klein often nevertheless provided the service or installed the equipment, this led to a substantial loss.

NechelesLaw, LLP

Klein] to explain *why* he broke the law." *United States v. Singh*, 877 F.3d 107, 120 (2d Cir 2017) (emphasis in the original).

**II.    Mr. Klein has Spent the Last Two years Assisting Others**

In this Section, we discuss what Mr. Klein has been doing since his original sentencing submission was filed, nearly twenty months ago.

As we discussed in our sentencing submission, Mr. Klein's company, Hashomer Alarm Systems, where he worked for forty years, shut down as a result of this case. Since the time that he wound up the company's affairs, a short while after pleading guilty in this case, he has been largely unemployed--working only occasionally for his son's company. This does not mean, however, that he has been doing nothing with his time. Rather, as the letters we attach to this supplemental submission attest, over the last few years he has been dedicating his time to assisting others—both in his immediate family and the community.

As Your Honor is aware, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬ She writes to Your Honor that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬ over the last couple of years, and that over that period, her "father has gone above and beyond." Ex. A. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* She also explains to Your Honor that her mother would not be able to provide her the assistance she does with her father's support. *See id.* ("They are a unit, and I need them both very much.").[2] *See also* Letter of Avi Fishoff, Ex. H ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Mr. Klein also plays an integral role in the life of another one of his children—his son Yitzy and his wife Hannah. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬ Ex. B. His parents got him into therapy and helped him get his life back on track. His father also helped him get a job and continues to teach him skills to help him succeed in that job. *Id.*

Both Yitzy and Hannah write about the crucial support the Kleins provide them. As Yitzy explains, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬." *Id.* H▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬ Ex. C. They thus both rely heavily on the Kleins. Hannah explains that after they "got married, we tried moving into the apartment that Peretz and Susan had so lovingly set up for me, but ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ They then moved back in with the Kleins. They "have tried to move out several times, even changing to a different apartment, but w[ere] unsuccessful each and every time." Ex. C. ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" *Id.*



---

[2] Raizel's current condition is further discussed is Susan Klein's June 1, 2022, submission to the Court. Dkt. #198.

3

NechelesLaw, LLP

      Outside of his immediate family, Peretz also assists his older brother, Abraham Klein. Abraham is now in his upper 80's and can no longer get around by himself. Peretz picks him up every morning, ▮▮▮▮▮▮▮▮▮▮ and then "drives him to the synagogue for early morning prayers." Later, in the afternoon, "Peretz picks up [his brother] again and transports him for his daily Talmud sessions in the afternoon, where Daddy meets many of his old friends." Ex. D. Abraham's daughter believes that her father would be homebound now without Peretz's support. *See id.* Another brother, Mordechai, writes to Your Honor about how Peretz helped him get his grocery store up and running again after it burned down last year. Ex. E.

      Mr. Klein's also spends his time helping others in the community. For example, ▮▮▮▮▮▮▮▮▮▮, writes how Peretz helps him with ▮▮▮▮▮▮▮▮▮▮. Ex. F. A few times a week, Peretz picks up Mr. Drucker, drives him to the pool, is his lifeguard while he swims, then helps him get out of the pool and takes him home. *Id.* He also helps a neighbor of his, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Letter of Aaron Ganz, Ex. G.

      All of these letters tell of a man who has spent his time awaiting sentencing helping others in whatever way he can.

   III.   <u>The Passage of Time Since the Crime Occurred, and Since Mr. Klein Pleaded Guilty, is a Reason the Court Should Impose a Sentence of Home Confinement</u>

      By 2015, e-rate had put Mr. Klein's companies on hold. After that date, he did not obtain any more funds from e-rate, although he continued to provide services to the schools for another year. In other words, the last money that Mr. Klein obtained from e-rate by fraudulent means was seven years ago.

      The search warrants of Mr. Klein's business and the schools was executed in March 2016. Over two years later, Mr. Klein was indicted and in February of 2020, he pleaded guilty to a Superseding Information.

      Mr. Klein is simply no longer the man he was back in the mid-2010's. He has been severely chastened by this case, with the shame it has brought on him and his family. He has been on pre-trial release for nearly four years—which has meant, for example, that he has been unable to travel to Israel to see his children and his new grandchildren who live there since 2018.

      This lengthy gap between Mr. Klein's criminal conduct and his guilty plea, on the one hand, and his sentencing, on the other, undercuts much of the purpose of federal sentencing. *See, e.g., United States v. Ray*, 578 F.3d 184, 201 (2d Cir 2009) ("Delayed execution of a sentence interrupts the defendant's reintegration into the community and thus frustrates effective rehabilitation."). For this reason, many courts, when faced with lengthy delays in sentencing, have varied downward on that basis alone. *See, e.g., United States v. Nieves*, 648 F. App'x 152, 156 (2d Cir 2016) ("The district court fully considered Nieves's cooperation, her extraordinary rehabilitation,' and the long delay in her sentencing in imposing a below-Guidelines, non-

NechelesLaw, LLP

incarceratory sentence with carefully crafted conditions of parole and community service around her needs."); *United States v. Jones*, 744 F.3d 1362, 1366 (D.C. Cir.) ("The district court also explained that it was reducing Thurston's sentence by another twelve months, and Ball's by another fifteen, to remedy any prejudice from the delays in their sentencings."); *United States v. Young*, 310 F App'x 784, 798 (6th Cir 2009). ("At the same time, the court granted Young … a one-level downward departure for delay in sentencing in his escape case").

We recognize that much of the delay in this case was the result of a *vis major*.[3] The point is not to assign blame for the delay but to recognize that it undercuts the needs for an incarceratory sentence. This is particularly true where Mr. Klein has used to time before his sentencing rehabilitating himself and serving his family and community.

For these reasons, as well as those in Mr. Klein's original submission, we respectfully request that the Court impose a sentence of probation and home confinement.

Respectfully submitted,

/s/

Susan Necheles
Gedalia Stern

---

[3] We note that "it is not the defendant's duty, or that of her attorney, to see that she is speedily prosecuted and sentenced." *Ray*, 578 F.3d at 200. Moreover, where a defendant is simply seeking "a modification of the terms of her sentence by reason" of the delay in his sentencing, "we see no reason to impose blame, fault, or responsibility on her for the delay, on the mere basis of the fact that she did not take earlier steps to be sentenced more rapidly." *Id.*